UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ZIARE CORWELL,  :
                Plaintiff,  :
v.  :
     :
WESTCHESTER COUNTY; ASSISTANT  :
WARDEN LAFONDA SPAULDING;  :
OFFICER ADAMES; OFFICER BELTRAN;  :
OFFICER CARDILLO; OFFICER COZIER;  :
SERGEANT DAVIS; CORRECTIONAL  :
OFFICER MELENDEZ; and  :
CORRECTIONAL OFFICER SCHILLIRO,  :
                Defendants.  :
--------------------------------------------------------------x

**OPINION AND ORDER**

19 CV 3049 (VB)

Briccetti, J.:

      Plaintiff Ziare Corwell, proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983 against defendants Westchester County (the "County"), Assistant ("Asst.") Warden LaFonda Spaulding, Sergeant ("Sgt.") Alexander Davis, and Correction Officers ("C.O.s") Juan Adames, Christopher Beltran, Dean Cardillo, Malik Cozier, Louis Melendez, and John Schirillo.  Liberally construed, plaintiff's amended complaint alleges defendants violated his Fourteenth Amendment rights while he was detained at the Westchester County Jail ("WCJ").

      Now pending is defendants' unopposed motion to dismiss the amended complaint pursuant to Rule 12(b)(6).  (Doc. #23).

      For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

1

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint, and draws all reasonable inferences in plaintiff's favor, as summarized below.

At all relevant times, plaintiff was a pretrial detainee at WCJ.

Plaintiff alleges that on March 14, 2019, in the East Housing Unit at WCJ, a physical altercation occurred between non-party C.O. Moore and another inmate.[1] According to plaintiff, C.O. Moore then radioed for assistance from the Emergency Response Team ("ERT") and directed plaintiff, who was within the vicinity of the altercation, to walk toward the dayroom, away from the location of the incident.

Plaintiff alleges he complied with C.O. Moore's instructions and was walking toward the dayroom and away from the location of the incident when officers from the ERT entered the hallway of the East Housing Unit. According to plaintiff, while the ERT officers proceeded down the hallway to the scene of the incident, they "bumrushed" plaintiff with an electrical shield, "which shocked/tasered" plaintiff and caused him to defecate in his clothing. (Doc. #14 ("Am. Compl.") at ECF 6). Plaintiff further alleges the contact with the electrical shield caused him "unnecessary severe pain" in his back and throughout his body. (Id.). Plaintiff alleges that following the incident, he was "taken to medical," and then to his cell, but "was not provided

---

[1] The Court takes judicial notice of plaintiff's grievance, dated March 18, 2019, which is incorporated by reference in the amended complaint, and in which plaintiff alleges the events giving rise to his claims occurred on March 14, 2019. (Doc. #23-4 at ECF 6).

Citations to "ECF __" refer to page numbers automatically assigned by the Court's Electronic Case Filing system.

with a change of clothing," despite having asked C.O. Moore numerous times for same. (Id. at ECF 6–7).

On March 18, 2019, plaintiff submitted a grievance respecting the incident, in which he alleged the above facts.

## DISCUSSION

I.     Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

---

[2]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

A court assessing a Rule 12(b)(6) motion may "consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Courts also may consider documents deemed "integral" to the complaint, id., and any matters subject to judicial notice, Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.  Unnumbered Paragraphs

Defendants argue the amended complaint should be dismissed because plaintiff does not state his claims in numbered paragraphs as required by Federal Rule of Civil Procedure 10(b).

The Court disagrees.

Defendants cite no case law for dismissal on this ground. They also overlook Phillips v. Girdich, 408 F.3d 124 (2d Cir. 2005), a Second Circuit case directly on point, which stands for the contrary proposition:

> [W]here the absence of numbering or succinct paragraphs [in a pro se case] does not interfere with one's ability to understand the claims or otherwise prejudice the adverse party, the pleading should be accepted. And even where a violation of Rule 10(b) is not harmless, dismissal is not typically the appropriate course of action.

4

Id. at 128.

Here, plaintiff's amended complaint, which utilized a form provided to plaintiff by the Court, comprises three pages of succinct and easily understandable allegations. Accordingly, the Court declines to dismiss the amended complaint pursuant to defendants' meritless argument that the pleading fails to comply with Rule 10(b).[3]

III.   Exhaustion

Defendants next argue plaintiff's amended complaint should be dismissed because plaintiff fails to allege whether he exhausted his administrative remedies prior to filing this lawsuit.

Again, the Court disagrees.

Under Rule 12(b)(6), dismissal on the grounds of lack of exhaustion is appropriate when, on the face of the complaint, it is clear plaintiff did not exhaust all remedies, including all administrative appeals, before commencing the action. Woodford v. Ngo, 548 U.S. 81, 90–93 (2006). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Failure to exhaust under the PLRA is an affirmative defense. Jones v. Bock, 549 U.S. 199, 216 (2007). A plaintiff is not required to plead exhaustion, so when "a prisoner indicates that he has taken some steps toward exhaustion, district courts will normally not infer from his

---

[3]   This is not the first time attorneys in the County Attorney's office, who are experienced in handling inmate pro se cases, have made this argument in this Court. See Moore v. Westchester County, 2020 WL 1503568, at *3 n.3 (S.D.N.Y. Mar. 30, 2020). The County Attorney's office is advised the Court neither appreciates nor will further tolerate having its time wasted by the same meritless argument.

Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

silence that he failed to take the remaining steps that full exhaustion would require." Huggins v. Schriro, 2015 WL 7345750, at *3 (S.D.N.Y. Nov. 19, 2015), report and recommendation adopted, 2016 WL 680822 (S.D.N.Y. Feb. 18, 2016) (emphasis added). "Dismissal under Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint." Roland v. Smith, 907 F. Supp. 2d 385, 388 (S.D.N.Y. 2012). If "ambiguity exists as to whether a plaintiff exhausted his administrative remedies," courts generally deny motions to dismiss on this ground. Huggins v. Schriro, 2015 WL 7345750, at *3.

Here, the amended complaint references plaintiff's grievance, a copy of which has been provided by defendants as part of their motion submission. (See Doc. #23-4 at ECF 6). The grievance is dated March 18, 2019. Because plaintiff's original complaint is dated March 28, 2019 (Doc. #2), only ten days after he submitted his grievance, it is unlikely plaintiff fully exhausted his claims prior to commencing this action. However, at the very least, "ambiguity exists" as to whether plaintiff exhausted his administrative remedies. See Huggins v. Schriro, 2015 WL 7345750, at *3. In other words, it is not clear from the face the amended complaint that plaintiff did not exhaust all remedies, including all administrative appeals, before commencing this action. See Woodford v. Ngo, 548 U.S. at 90–93.

Absent a more complete record, the Court cannot conclude, as a matter of law, that plaintiff failed to exhaust his administrative remedies. Accordingly, the Court declines to dismiss the amended complaint on exhaustion grounds.

IV.     Excessive Force Claim

Defendants argue plaintiff fails plausibly to state an excessive force claim against defendants.

The Court disagrees.

6

A.   Legal Standard

"[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999).

A pretrial detainee bringing a Fourteenth Amendment excessive force claim must plausibly allege the defendant acted deliberately and "that the force purposefully or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389, 396–97 (2015). Factors to consider in determining the objective reasonableness of the force used include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Kingsley v. Hendrickson, 576 U.S. at 397.

However, "claims for excessive force under the Fourteenth Amendment must involve force that is either more than de minimis or repugnant to the conscience of mankind." Johnson v. City of New York, 2020 WL 3100197, at *4 (S.D.N.Y. June 11, 2020) (citing United States v. Walsh, 194 F.3d at 48) (emphasis added). Indeed, "a de minimis use of force will rarely suffice to state a constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).

B.   Personal Involvement

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983." Wright v. Smith, 21 F.3d 496, 501 (2d. Cir. 1994).

> Supervisor liability under § 1983 can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a

7

policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003).[4]

"A supervisor defendant's 'mere receipt of a letter or grievance, without personally investigating or acting [thereon] is insufficient to establish personal involvement.'" Constant v. Prack, 2019 WL 3287818, at *10 (S.D.N.Y. July 19, 2019) (quoting Alvarado v. Westchester County, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014)) (alteration in original). "Personal involvement will be found, however, where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." Harris v. Westchester Cty. Dept. of Corr., 2008 WL 953616, at *10 (S.D.N.Y. Apr. 3, 2008).

    C.    Application

        1.    Sgt. Davis and C.O.s Adames, Beltran, Cardillo, Cozier, Melendez, and Schirillo

Here, plaintiff plausibly alleges an excessive force claim against ERT members Sgt. Davis and C.O.s Adames, Beltran, Cardillo, Cozier, Melendez, and Schirillo. Plaintiff alleges these defendants entered the East Housing Unit and "bumrushed" him with an active electrical shield, which shocked him and caused him to defecate. (Am. Compl. at ECF 6). Plaintiff further alleges these defendants responded to the East Housing Unit to assist C.O. Moore in an incident that had nothing to do with plaintiff. Thus, plaintiff plausibly alleges there was no need for the

---

[4] After Ashcroft v. Iqbal, district courts within the Second Circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these factors remain viable. See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016) (collecting cases). The Second Circuit has yet to resolve this dispute. Id.

ERT officers to use force against him, and that the use of force was objectively unreasonable under the circumstances.  See Kingsley v. Henrickson, 576 U.S. at 397.

Although defendants contend the electrical shield was not active at the time of the alleged incident, that plaintiff did not complain of any pain, or show any sign of injury, following the incident, and that plaintiff fails to allege specifically which member(s) of the ERT made contact with and injured him, the Court declines to accept at this stage of the proceedings defendants' allegations respecting the incident, which the Court cannot properly consider on a motion to dismiss.[5]  At this early stage of the case, plaintiff plausibly alleges the named members of the ERT used an unnecessary amount of force against him when they entered the East Housing Unit to respond to a matter that did not concern him.

        2.      Asst. Warden Spaulding

Plaintiff also alleges a plausible excessive force claim against Asst. Warden Spaulding.  As noted above, supervisor liability under Section 1983 may be sufficiently alleged by suggesting a defendant's "failure to remedy a wrong after being informed" of an alleged constitutional deprivation.  See Richardson v. Goord, 347 F.3d at 435.  Here, plaintiff alleges he complained to Asst. Warden Spaulding of an alleged constitutional deprivation, and that she

---

[5]  Indeed, as part of their instant motion, defendants submit copies of plaintiff's medical records pertaining to the alleged use of force incident, as well as an "Incident Response Report," prepared by WCJ staff and containing a written account of C.O. Beltran, who alleges to have been the only ERT member who made contact with plaintiff during the March 14, 2019, incident.  (See generally Doc. #23).  Because the Court declines to convert defendants' motion to a motion for summary judgment, it does not consider any materials outside of the amended complaint that are neither integral to the pleading nor otherwise incorporated by reference therein.  See Fontes v. Bd. of Managers of Cont'l Towers Condo, 848 F.2d 24, 25 (2d Cir. 1998).

This is not to say plaintiff's allegations could withstand a motion for summary judgment, at which point the Court may consider evidence and materials outside of the pleadings and plaintiff's own allegations.

responded to plaintiff's grievance, "misrepresenting" that the use of force by ERT members was incidental and necessary, and also that the electrical shield did not shock plaintiff because it was inactive at the time of the incident. (Am. Compl. at ECF 8). Accordingly, plaintiff sufficiently alleges Asst. Warden Spaulding's supervisor liability in an alleged constitutional violation.

For the above reasons, plaintiff's Fourteenth Amendment excessive force claim shall proceed against Sgt. Davis, C.O.s Adames, Beltran, Cardillo, Cozier, Melendez, and Schirillo, and Asst. Warden Spaulding.

V.      Deliberate Indifference Claim

Liberally construed, plaintiff's amended complaint alleges a Fourteenth Amendment deliberate indifference claim respecting the conditions of his confinement, inasmuch as plaintiff alleges he was deprived a change of clothing following the alleged excessive force incident.

To the extent plaintiff pleads such a claim, it must be dismissed.

A.      Legal Standard

Although "the Constitution does not mandate comfortable prisons, prisoners are entitled to basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." Randle v. Alexander, 960 F. Supp. 2d 457, 474–75 (S.D.N.Y. 2013). "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). To state such a claim, a plaintiff's allegations must satisfy two prongs: an objective prong and a mens rea prong. Namely, plaintiff must plausibly allege "that the challenged conditions were sufficiently serious," and defendants "acted with at least deliberate indifference to the challenged conditions." Id.

To plead the objective prong, a pretrial detainee must plausibly allege the challenged conditions, "either alone or in combination, pose[d] an unreasonable risk of serious damage to

10

his health." Darnell v. Pineiro, 849 F.3d at 30. "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." Id.

To plead the mens rea prong, a pretrial detainee must plausibly allege "that the defendant-official acted intentionally . . . , or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known," of the risk. Darnell v. Pineiro, 849 F.3d at 35. The Fourteenth Amendment's mens rea prong "is defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." Id.

B.  Application

Here, plaintiff fails plausibly to state a deliberate indifference claim respecting the alleged failure of WCJ staff to provide him a new set of clothing on March 14, 2019. In the amended complaint, plaintiff alleges: "I screamed to Officer Moore 25 times and he promised me 25 times that I would receive a change of clothing." (Am. Compl. at ECF 7). Indeed, plaintiff does not allege having asked any of the named ERT defendants, or Asst. Warden Spaulding, for a change of clothing immediately after the alleged use of force incident. Moreover, plaintiff submitted his grievance on March 18, 2019, four days after the alleged incident, which suggests Asst. Warden Spaulding became aware of plaintiff's complaint respecting this clothing four days after the incident, at the earliest.

For the above reasons, plaintiff's allegations fail to suggest any of the named defendants denied plaintiff a change of clothing following the alleged excessive force incident, or even that any defendant intentionally or recklessly prevented him from laundering his clothing following

11

the incident. Accordingly, to the extent plaintiff alleges a deliberate indifference claim, such claim must be dismissed.

VI.     Monell Claim

Defendants argue plaintiff fails plausibly to state a claim against the County pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978).

The Court agrees.

Under Monell, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." Monell v. Dep't of Soc. Servs., 436 U.S. at 694. Thus, to assert a Section 1983 claim against the County, plaintiff must allege the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. See Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:  (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

"While Monell claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2), . . . such claims nevertheless must meet the plausibility requirements of

[Bell Atlantic Corp. v. Twombly, 550 U.S. at 572], and [Ashcroft v. Iqbal, 556 U.S. at 678]." Guzman v. United States, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013) (citing Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)). "In other words, boilerplate allegations will not suffice." Id. at *3. Thus, allegations that a defendant "acted pursuant to a policy, without any facts suggesting the policy's existence, are plainly insufficient." Missel v. County of Monroe, 351 F. App'x 543, 545–46 (2d Cir. 2009) (summary order).

Here, plaintiff fails plausibly to allege the existence of a County policy or custom which deprived plaintiff of a constitutional right. Plaintiff's allegations that the County "fails to properly train and supervise" its employees "as to a proper application of force," and that WCJ staff "has a pattern of using excessive [force] on its inmates," are entirely conclusory. (Am. Compl. at ECF 7). "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused plaintiff's injury." Adams-Flores v. City of New York, 2020 WL 996421, at *7 (S.D.N.Y. Mar. 2, 2020) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993), overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163). And "a 'single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'" Santana v. City of New York, 2018 WL 1633563, at *10 (S.D.N.Y. Mar. 29, 2018) (quoting DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998)). Simply, plaintiff alleges no facts suggesting the County has a custom or policy of failing to train or supervise its personnel, or a custom or policy of approving of, or acquiescing to, excessive uses of force.

Accordingly, the amended complaint plainly fails to state a plausible Monell claim.

## CONCLUSION

Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's Fourteenth Amendment excessive force claim shall proceed against Asst. Warden LaFonda Spaulding, Sgt. Alexander Davis, and C.O.s Juan Adames, Christopher Beltran, Dean Cardillo, Malik Cozier, Louis Melendez, and John Schirillo. All other claims are dismissed.

By July 27, 2020, Asst. Warden LaFonda Spaulding, Sgt. Alexander Davis, and C.O.s Juan Adames, Christopher Beltran, Dean Cardillo, Malik Cozier, Louis Melendez, and John Schirillo shall file an answer to the complaint.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion (Doc. #23) and terminate Westchester County as a defendant in this action.

Dated: July 13, 2020
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge